IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 23, 2013 at Knoxville

## MARTHA L. PATLAN-CANO v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-D-3184      Steve R. Dozier, Judge**

_____

**No. M2012-01570-CCA-R3-PC - Filed July 25, 2013**

_____


The Petitioner, Martha Patlan-Cano, appeals the Davidson County Criminal Court's denial of her petition for post-conviction relief from her convictions of first degree felony murder and aggravated child abuse and resulting effective sentence of life plus twenty years in confinement.  On appeal, the Petitioner contends that she received the ineffective assistance of counsel.  Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Martha L. Patlan-Cano.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Katie Miller, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**


**I.  Factual Background**


The record reflects that on February 23, 2003, the body of the Petitioner's four-year-old son was found by a jogger in a Nashville park.  In April 2007, the Petitioner and her boyfriend, Genaro Edgar Espinosa Dorantes, were tried jointly for first degree felony murder and aggravated child abuse, a Class A felony.  At the conclusion of trial, the jury convicted the defendants as charged.  The trial court conducted a sentencing hearing and sentenced the

Petitioner to consecutive sentences of life for the murder conviction and twenty years for the aggravated child abuse conviction.

This court affirmed the Petitioner's convictions and sentences. State v. Martha Patlan, No. M2011-01175-CCA-RM-CD, 2011 Tenn. Crim. App. LEXIS 558, at \*24-26 (Nashville, July 18, 2011). In explaining the sufficiency of the evidence to support the convictions, this court gave the following summary of the facts of the case:

> The proof at trial, viewed in the light most favorable to the state, established that the defendant and co-defendant abducted the victim [from his father in Texas] on June 18, 2002 and shared physical custody of the victim until his death. It is undisputed that the victim was under eight years old and suffered serious bodily injury. The medical examiner's autopsy showed that the victim suffered second and third degree burns within two weeks of his death as the result of being immersed in scalding hot water, buttocks and feet first, in a fetal-like position. Dr. McMaster, who conducted the autopsy, concluded that the burns could not have been accidental. In addition to the burns, the victim's skull was fractured from blunt force trauma. Dr. McMaster likewise concluded that the blow to the victim's head could not have been accidental because of a wound to the victim's right hand that was consistent with the victim trying to protect himself from attack. The autopsy concluded that the immediate cause of death was blunt trauma injury to the brain and skull; however, Dr. McMaster stated that the infections from the burns would have inevitably been fatal without medical treatment.

> During the time of his abuse and up to his death, the victim was in the exclusive care of the defendant and co-defendant. The victim was visibly injured and in need of medical attention. The co-defendant and the defendant knew that the victim needed medical attention, yet neither of them sought medical treatment for the victim. When asked why he did not take the child to the doctor, the co-defendant stated, "since he wasn't [the victim's] father he didn't have any reason to want to make [the victim] get better." The co-defendant further stated that the defendant had wanted to take the victim from Texas, and he did not. There was no evidence that the

co-defendant coerced the defendant or that the defendant attempted to report the abuse or otherwise prevent the victim from being further abused. Likewise, the defendant never reported that the co-defendant was abusing her. Instead, whenever someone expressed concern about the victim's condition, the defendant provided excuses, which the medical testimony refuted, and fled with the co-defendant. When speaking with her sisters, the defendant asked for money allegedly for medicine to treat the victim's injuries and told [one of her sisters] she was going on a trip, but she never indicated that she was abused, held captive against her will, or afraid of the co-defendant. Moreover, after the victim's death, the defendant fled to Mexico with the co-defendant where they hid out and evaded arrest for nearly three years.

Id. at **24-26.

In a timely pro se petition for post-conviction relief, the Petitioner raised various issues, including that she received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel filed an amended petition, alleging that the Petitioner received the ineffective assistance of counsel because trial counsel failed to communicate with her adequately about the trial process and testifying at trial; failed to cross-examine an expert witness and offer an adequate defense; and failed to file pretrial motions and request a hearing on the motions.

At the evidentiary hearing, the Petitioner testified through an interpreter that she was arrested in 2006 and that her family hired trial counsel. Counsel represented her for ten or eleven months but met with her only one time in the county jail. Counsel brought an interpreter to the meeting, and the meeting lasted ten to fifteen minutes. Counsel and the Petitioner did not discuss any witnesses, the State's evidence against her, or trial strategy, and counsel did not explain things well to her. Counsel told the Petitioner that he was going to negotiate a plea agreement with the State and that the State would offer her a sentence of thirty to thirty-five years. However, that did not happen, and the Petitioner went to trial. Counsel and the Petitioner talked about the Petitioner testifying at trial. The Petitioner wanted to testify, but counsel told her she could not testify. After their first meeting, counsel told the Petitioner's family that he was going to meet with her again. However, he later told her family that she did not want to talk with him. The Petitioner stated, "I didn't want to talk to him because . . . I didn't know if he was really going to represent me." The Petitioner said that on the last day of trial, counsel told her that he was going to "request the maximum punishment so that [she] could appeal." The Petitioner did not receive any discovery

-3-

materials for the case until after the trial.

On cross-examination, the Petitioner denied that counsel's assistant visited her and said that she saw counsel's assistant at the one meeting she had with counsel in jail. The Petitioner acknowledged that she was present for several court appearances and that counsel talked with her when she came to court. She said, however, that counsel "didn't talk much with me. It was like two or three minutes." She added, "I mean, he would talk to me just to tell me what -- what the trial would be about." She said counsel did not talk with her about the trial until after it started. The Petitioner was expecting counsel to negotiate a plea agreement with the State so that she would not get such a lengthy sentence. During the trial, the trial court asked the Petitioner if she wanted to testify. The Petitioner said that she told the court no and that she did so because counsel told her that "it wasn't good for [her] to testify." She said she would have liked for counsel to have communicated with her more, to have informed her about everything that was going to happen at trial, and to have informed her that she was going to appear before a jury. The State asked the Petitioner if there were any witnesses she had wanted counsel to call at trial, and she answered, "No." The State also asked her if her testimony would have changed the outcome of the trial, and she answered, "I don't know."

Trial counsel testified for the State that he began practicing law in 1996 with a "60/40 split of civil to criminal" law. About one and one-half years later, counsel changed his practice to ninety percent criminal law. At the time of the evidentiary hearing, his practice was ninety-eight percent criminal law. Counsel said he was bilingual and could usually hold a conversation in Spanish. He acknowledged that he could communicate with his Spanish-speaking clients. Before the Petitioner's 2007 trial, counsel had participated in thirty or forty trials. The Petitioner's father and sister, Maria, retained him to represent the Petitioner. Regarding the Petitioner's claim that counsel met with her only one time in jail, counsel stated, "That -- that may be correct." However, he spoke with her when she made court appearances. Counsel acknowledged that he wanted to settle the Petitioner's case and said that he spoke with her many times "about things that she might be willing to accept and possibilities maybe she might be willing to testify against the codefendant, different strategies we talked about and things that she'd be willing to do." Counsel also spoke with the Petitioner's father and sister about a plea. However, the State never made an offer. The Petitioner's co-defendant filed a motion to sever his case from the Petitioner's case. Counsel said that he "seconded the motion" but that the trial court denied it.

Trial counsel testified that the State provided full discovery in the case. Counsel said that his trial strategy was to try to show that the Petitioner was in a violent, domestic relationship with her co-defendant and that the co-defendant would not allow her "any space to make any moves unless he wanted to make the moves." Counsel learned about the

domestic violence from the Petitioner and her sister. Counsel said that he wanted to show a pattern of abuse to the jury and that he thought he called the Petitioner's sister to testify in order "to try to bring out some of those facts." Counsel acknowledged that he tried to get evidence of bruises on the Petitioner's face admitted into evidence but that the trial court refused to admit the evidence. Counsel also wanted to show the jury that the Petitioner did not intentionally inflict harm on the victim. His goal was for the jury to convict her of a lesser-included offense. Counsel said that the Petitioner and her family knew about her trial date and that he was "a little baffled" by her claim that she did not know she was going to trial.

Trial counsel testified that he did not give discovery materials to the Petitioner before trial because "I don't like my clients [with] very serious charges to have their discovery back at the jail." Counsel said that he did not go over discovery with the Petitioner "page by page" but that they went over some of the "problem facts." Counsel also did not show photographs to the Petitioner at the jail. However, he said that he showed color photographs to her at trial and that she was "overwhelmed to say the least." Counsel did not advise the Petitioner not to testify and told her that the decision was hers. He said he never tried to get the maximum punishment for his clients and that he could not think of a situation in which he would suggest the maximum. He said that the Petitioner was very sweet, that he felt sorry for her situation, and that the only witness who would have been beneficial to her case was her sister. Counsel acknowledged that the Petitioner's sister testified for the State so that he did not have to call her to testify. He said the Petitioner's sister said some favorable things for her and was a "very fair" witness.

On cross-examination, trial counsel testified that his assistant visited the Petitioner at least twice in jail. He explained that he did not leave discovery with the Petitioner at the jail because other inmates could have found out information about her case and testified against her. He acknowledged that the Petitioner's discovery materials were in English and said that he did not translate reports for her line by line. He said, though, that they "went over the gist of what the reports . . . were saying." The Petitioner did not want to testify because some of the State's witnesses had testified about her not protecting the victim. Counsel did not investigate hiring an expert to rebut the State's proof. He said that if he failed to cross-examine a State expert at trial it was because "one, someone's already asked -- answered the question or, two, I'm not trying to draw any extra light to it."

On redirect examination, trial counsel testified that his assistant helped him with trial preparation. He said that at first, the Petitioner was "a little timid" about speaking with him and his assistant. Counsel let her know that he was representing her and that he wanted to show she was different from her co-defendant.

In a written order, the post-conviction court denied the petition for post-conviction relief. Regarding the Petitioner's claim that counsel failed to meet and communicate with her adequately, the post-conviction court specifically accredited trial counsel's testimony that he met with her while she was in jail and in court, that his assistant met with her twice, that counsel effectively communicated with her, and that she was aware of her trial date. The trial court also specifically accredited counsel's testimony that he discussed testifying with the Petitioner and that he told her that it was her decision whether to testify. The court noted that it held a Momon hearing during the trial and that the record reflected the Petitioner voluntarily waived her right to testify. Regarding the Petitioner's claim that trial counsel failed to cross-examine the State's expert, the court again accredited counsel's testimony that he did not cross-examine the witness because "he had nothing left to add." As to the Petitioner's claim that counsel failed to file pretrial motions and request a hearing on the motions, the court found that the Petitioner failed to present any proof to support her claim. Finally, the post-conviction court noted that the Petitioner failed to present any evidence or witnesses at the hearing that would have changed the outcome of her trial. In sum, the post-conviction court determined that the Petitioner failed to show counsel rendered deficient performance or that she was prejudiced by any deficiency and denied the petition.

## II. Analysis

The Petitioner contends that she received the ineffective assistance of counsel because trial counsel met with her only one time in jail, failed to communicate with her adequately, led her to believe that he was going to make "a deal" with the State, did not give her any discovery materials until after the trial, did not go over most of the discovery with her, did not obtain the services of an expert to support the trial strategy, and allowed her to decide not to testify, which was "fatal to the case." The State argues that the post-conviction court properly denied the petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Initially, we note that the post-conviction court specifically accredited trial counsel's testimony over that of the Petitioner. Regarding the Petitioner's complaint that trial counsel failed to meet and communicate with her adequately and did not give her discover materials, counsel testified that although he may have met with the Petitioner only one time in jail, he talked with her during court appearances, and his assistant met with her at least twice. Counsel also testified that although he did not leave discovery materials with the Petitioner in jail or go over the reports in discovery "line by line," he went over the "gist" of the reports with her and they discussed some of the case's "problem facts." Counsel said that he also showed color photographs of the victim to the Petitioner at trial and that the Petitioner and her family were well-aware of her court date. Counsel had wanted to settle the Petitioner's case, but the State never made a plea offer. Regarding the Petitioner's decision not to testify, counsel said that he told her the decision was hers and that she decided not to testify because witnesses had said she failed to protect the victim. Finally, regarding counsel's failure to obtain an expert to support the defense's trial strategy, the Petitioner did not have such an

expert testify at the evidentiary hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit the witness might have offered to the Petitioner's case. We note that at the hearing, the Petitioner did not offer her own testimony to support such a strategy and stated that she did not know if her testimony would have changed the outcome of the trial. Therefore, we agree with the post-conviction court that the Petitioner has failed to show that she received the ineffective assistance of counsel.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
NORMA MCGEE OGLE, JUDGE